# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0359

Charles Aldean,
Respondent,

vs.

City of Woodbury,
Appellant.

**Filed February 5, 2024**
**Affirmed**
**Cochran, Judge**

Washington County District Court
File No. 82-CV-22-1266

Samantha E. Steward, Meuser, Yackley & Rowland, P.A., Eden Prairie, Minnesota (for respondent)

Paola K. Maldonado, Christina C. Petsoulis, Brandon M. Fitzsimmons, Flaherty & Hood, P.A., St. Paul, Minnesota (for appellant)

Zachary J. Cronen, Calen E. King, Squires, Waldspurger & Mace, P.A., Minneapolis, Minnesota; and

Timothy Jung, Lind, Jensen, Sullivan & Peterson, Minneapolis, Minnesota (for amicus curiae Association of Minnesota Counties)

Paul A. Merwin, Patricia Y. Beety, League of Minnesota Cities, St. Paul, Minnesota (for amici curiae League of Minnesota Cities and Coalition of Greater Minnesota Cities)

Considered and decided by Slieter, Presiding Judge; Cochran, Judge; and Larson, Judge.

## SYLLABUS

A public employer's obligation, under Minnesota Statutes section 299A.465, subdivision 1(c) (2022), to "continue to provide health coverage for" a qualifying

duty-disabled peace officer or firefighter requires that the public employer make health-insurance coverage available for the officer or firefighter until the officer or firefighter reaches the age of 65. The public employer's obligation to make coverage available continues even if the officer or firefighter elects not to participate in the employer's health-insurance plan for a period of time and later seeks to reinstate coverage.

## OPINION

**COCHRAN**, Judge

In this appeal following a grant of summary judgment, appellant-city challenges the district court's order requiring the city to reinstate respondent's access to the city's health-care plan pursuant to Minnesota Statutes section 299A.465, subdivision 1(c) (2022), for respondent and his dependents.[1] Because we conclude that the statute unambiguously requires appellant to make coverage available for respondent, even though respondent's coverage had temporarily lapsed, we affirm.

## FACTS

This case arises from respondent Charles Aldean's efforts to obtain health-insurance coverage from appellant City of Woodbury (the city) under Minnesota Statutes section 299A.465 (2022). The following facts are undisputed.

Aldean was employed as a Washington County deputy sheriff for approximately ten years. In March 2017, he joined the Woodbury Police Department as a police officer. He

---

[1] We note that there were significant amendments made to the statutes governing duty-disability benefits and continued health-insurance coverage in 2023. *See* 2023 Minn. Laws ch. 48. The statutory provision at issue in this appeal was not amended.

was employed by the city until he resigned in April 2020. While employed with the city, Aldean was enrolled in the city's group health plan with his wife and two children listed as dependents.

Prior to resigning, Aldean experienced health problems arising from his work. As a result, he applied for duty-disability benefits while still employed with the city. On April 13, 2020, the Public Employees Retirement Association (PERA) determined that Aldean was entitled to duty-disability benefits under state law and continued health-insurance coverage from the city until the age of 65 under section 299A.465. The city did not petition for review of PERA's determination. Aldean resigned effective April 30, 2020, but continued to be enrolled in the city's health plan.

In summer 2020, Aldean found employment with the Minnesota Department of Employment and Economic Development. Around that same time, Aldean stopped paying his portion of the city's health-insurance premium and was dropped off the city's health plan. Then, on October 6, 2021, Aldean requested to be placed back on the city's health plan and to receive health insurance through the city. The city denied his request.

Aldean sued the city, seeking benefits owed under section 299A.465. The city moved to dismiss the complaint for failure to state a claim, and the district court denied the motion. The parties then filed cross-motions for summary judgment. Aldean sought an order requiring the city to continue to offer him and his dependents health coverage until age 65, while the city sought a determination that the city was no longer obligated to provide health coverage because Aldean voluntarily ended his coverage.

The district court granted Aldean's motion for summary judgment and denied the city's motion. In its order, the district court determined that the unambiguous language of section 299A.465 "requires [the city] to continue to provide health coverage for [Aldean] and his dependents until [Aldean] is age 65 and, in the case of his dependents, until they are no longer dependents if that happens before [Aldean] turns 65." As a result, the district court ordered the city to "allow [Aldean] and [Aldean's] dependents access to its group health-care plan in accordance with Minnesota Statutes [section] 299A.465."

The city appeals.

## ISSUE

Did the district court err by determining that Minnesota Statutes section 299A.465, subdivision 1(c), requires the city to continue to provide health-insurance coverage for Aldean?

## ANALYSIS

The city argues that the district court erred by determining that the city must provide Aldean health-insurance coverage under section 299A.465 and granting summary judgment in Aldean's favor.[2]

---

[2] On appeal, the city does not challenge the district court's determination that, if the city must provide Aldean health-insurance coverage, the city must also provide coverage for Aldean's dependents. *See* Minn. Stat. § 299A.465, subd. 1(c) (stating that an employer "shall continue to provide health coverage for . . . the officer's or firefighter's dependents if the officer or firefighter was receiving dependent coverage at the time of the injury under the employer's group health plan"). Accordingly, if Aldean is entitled to health-insurance coverage, his dependents are also entitled to health-insurance coverage as specified in section 299A.465, subdivision 1(c)-(d).

4

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the [moving party] is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01; *see also Under the Rainbow Early Educ. Ctr. v. County of Goodhue*, 978 N.W.2d 893, 902 (Minn. 2022) (quoting Minn. R. Civ. P. 56.01). We review a district court's grant of summary judgment de novo. *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 371 (Minn. 2022). "We will affirm a grant of summary judgment if no genuine issues of material fact exist and if the court accurately applied the law." *Id.* at 371-72.

Since 1997, the legislature has required public employers to continue to provide health-insurance coverage for those peace officers and firefighters who are determined to be eligible for duty-disability benefits. Minn. Stat. § 299A.465, subd. 1(a), (c); 1997 Minn. Laws ch. 239, art. 8, § 6, at 2852-53.[3] More specifically, section 299A.465, subdivision 1(c), provides that, for duty-disabled peace officers and firefighters:

> The officer's or firefighter's employer shall continue to provide health coverage for:
> (1) the officer or firefighter; and
> (2) the officer's or firefighter's dependents if the officer or firefighter was receiving dependent coverage at the time of the injury under the employer's group health plan.

---

[3] A "duty disability" is a physical or mental condition expected to prevent an officer or firefighter, "for a period of not less than 12 months, from performing the normal duties" of their position and "that is a direct result of an injury incurred during . . . the performance of inherently dangerous duties that are specific to the positions covered by the public employees police and fire retirement plan." Minn. Stat. § 353.01, subd. 41 (2022); *see also* Minn. Stat. § 352B.011, subd. 7 (2022) (adopting the same definition for the State Patrol retirement fund).

Minn. Stat. § 299A.465, subd. 1(c). Section 299A.465, subdivision 1(d), states that "[t]he employer is responsible for the continued payment of the employer's contribution for coverage" and that "[c]overage must continue for the officer or firefighter and, if applicable, the officer's or firefighter's dependents until the officer or firefighter reaches or, if deceased, would have reached the age of 65." *Id.*, subd. 1(d).

Here, it is undisputed that PERA determined Aldean to be eligible for duty-disability benefits, as is required under subdivision 1(a)(1) to qualify for continued health-insurance coverage, and that the city did not challenge that determination. It is also undisputed that Aldean was a peace officer at the time of the determination. Accordingly, the sole question before us is whether the city still has an obligation under section 299A.465, subdivision 1(c)—to "continue to provide health coverage for" Aldean as a duty-disabled peace officer—even though Aldean stopped paying his contribution and is not currently receiving health-insurance coverage from the city. This question presents an issue of statutory interpretation, which we review de novo. *State by Smart Growth Minneapolis v. City of Minneapolis*, 954 N.W.2d 584, 590 (Minn. 2021).

"The goal of all statutory interpretation 'is to ascertain and effectuate the intention of the legislature.'" *Id.* (quoting Minn. Stat. § 645.16 (2020)). "The first step of statutory interpretation is to determine whether the statute's language, on its face, is ambiguous." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 169 (Minn. 2021) (quotation omitted). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Id.* (quotation omitted). When interpreting a statute to determine whether it is ambiguous, "we construe the statute's words and phrases according to their plain and

6

ordinary meaning." *Id.* (quotation omitted). We also read the statute "as a whole to harmonize all its parts, and, whenever possible, no word, phrase or sentence should be deemed superfluous, void or insignificant." *Kremer v. Kremer*, 912 N.W.2d 617, 623 (Minn. 2018) (quotation omitted). We will go beyond the statute's plain language to determine the legislature's intent only if the language is ambiguous. *Hagen*, 963 N.W.2d at 169. But "[w]hen a statute is unambiguous, our role is to enforce the language of the statute and not explore the spirit or purpose of the law." *Id.* (quotation omitted). In other words, "[i]f a statute is susceptible to only one reasonable interpretation, then we must apply the statute's plain meaning." *In re Application of Moratzka*, 988 N.W.2d 42, 47 (Minn. 2023) (quotation omitted).

Aldean and the city dispute whether the legislative intent of section 299A.465, subdivision 1(c), is clear or ambiguous under the circumstances of this case. Aldean argues that the statute unambiguously requires the city to continue to offer health-insurance coverage to Aldean until Aldean turns age 65. The city argues that the statute's language is ambiguous and that the legislative history and public policy support its interpretation that the city's obligation to Aldean ended when Aldean voluntarily dropped off the city's health plan. We conclude that the statute is unambiguous and requires the city to continue to provide health-insurance coverage to Aldean.

We begin our analysis by considering the language of subdivision 1(c) that is at the center of the parties' dispute. The relevant portion of subdivision 1(c) states that the public employer of a qualifying duty-disabled peace officer or firefighter "*shall continue to provide* health coverage for . . . the officer or firefighter." Minn. Stat. § 299A.465,

7

subd. 1(c) (emphasis added). Neither the word "continue" nor "provide" is defined within the statute. Accordingly, we turn to dictionary definitions to determine the plain and ordinary meaning of these terms. *See Lagasse v. Horton*, 982 N.W.2d 189, 198 (Minn. 2022) ("When a term is not defined by statute, we may use dictionary definitions.").

The word "continue" is defined in *Merriam-Webster's Collegiate Dictionary*, consistent with the city's proposed definitions, as "to maintain without interruption a condition, course, or action" and "to remain in existence." *Merriam-Webster's Collegiate Dictionary* 270 (11th ed. 2014); *see also The American Heritage Dictionary of the English Language* 398 (5th ed. 2018) (defining "continue" as "[t]o go on with a particular action or in a particular condition; persist" and "[t]o exist over a period; last"). And *Merriam-Webster's Collegiate Dictionary* defines "provide," consistent with Aldean's proposed definition, as "to supply or make available (something wanted or needed)" and "to make something available to." *Merriam-Webster's*, *supra*, at 1001; *see also American Heritage*, *supra*, at 1418 (defining "provide" as "[t]o make available (something needed or desired); furnish" and "[t]o supply something needed or desired to"). Reading the definitions of "continue" and "provide" together, we conclude that the plain language of the phrase "shall continue to provide health coverage for . . . the officer or firefighter" means that the employer must maintain, without interruption, the availability of health-insurance coverage for a qualifying duty-disabled officer or firefighter. As a result, the plain language of subdivision 1(c) creates an obligation that the public employer make health-insurance coverage available without interruption, regardless of whether the duty-disabled officer or firefighter elects to accept that coverage.

The city concedes that the above interpretation of the phrase "shall continue to provide health coverage" is reasonable, but it argues that the language of subdivision 1(c) also supports another reasonable interpretation. The city contends that the phrase "shall continue to provide health coverage" in subdivision 1(c) can be interpreted as an obligation of the public employer to continue existing health coverage for an officer or firefighter once the employee is determined to be duty-disabled but that this obligation ends if the duty-disabled employee "voluntarily discontinue[s] their health coverage." To support its interpretation, the city focuses on the word "continue." Thus, the city asserts that, if a duty-disabled employee "voluntarily discontinue[s]" participation in the former employer's health plan for any reason, the employer's obligation to "continue to provide health coverage" under subdivision 1(c) ceases because there is no health coverage to "continue."

Based on the plain language of the statute, we conclude that the city's proffered interpretation of subdivision 1(c) is not reasonable. First, the city's interpretation overlooks that the public employer's obligation under subdivision 1(c) is to "continue to *provide* health coverage," not to "continue health coverage." Minn. Stat. § 299A.465, subd. 1(c) (emphasis added). As discussed above, "provide" means to "make available." *Merriam-Webster's*, *supra*, at 1001. The legislature's inclusion of the word "provide" in subdivision 1(c) therefore requires the employer to continue to *make available* health coverage for a qualifying duty-disabled officer or firefighter. The city's contrary interpretation—that it need only continue existing coverage—fails to give meaning to the phrase "to provide." When interpreting a statute's plain language, "no word, phrase or sentence should be deemed superfluous, void or insignificant." *Kremer*, 912 N.W.2d

9

at 623. Because the city's proposed interpretation would render "to provide" superfluous, the city's interpretation of subdivision 1(c) is not reasonable.[4] *See id.*

The city's proffered interpretation also is not reasonable because it requires us to read a limitation into subdivision 1(c) that does not exist in the plain language. Under the city's proffered interpretation, a public employer's obligation "to continue to provide health coverage" under subdivision 1(c) is conditioned upon the employee maintaining uninterrupted coverage with the public employer after becoming duty-disabled. According to the city, if the employee elects not to maintain coverage for any period of time, the public employer's obligation under subdivision 1(c) ends. Subdivision 1(c), however, does not include language setting forth such a limitation. Minn. Stat. § 299A.465, subd. 1(c)(1). The public employer's obligation under subdivision 1(c) "to continue to provide health coverage for [the duty-disabled] officer or firefighter" is unconditional. *Id.* If the legislature intended to limit a public employer's obligation "to continue to provide health coverage for" a duty-disabled officer or firefighter in the manner urged by the city, the

---

[4] The city also cites a nonprecedential opinion of this court and an administrative-law-judge decision to assert that the word "continue" supports multiple reasonable interpretations of section 299A.465, subdivision 1(c). *See Davison v. City of Minneapolis*, No. A08-0535, 2009 WL 234349 (Minn. App. Feb. 3, 2009); *In re City of Austin and City of Minneapolis*, OAH No. 65-3600-33288 (Dec. 16, 2016). Neither decision is binding on this court. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010) (explaining that "[t]he district court, like this court, is bound by supreme court precedent and the published opinions of the court of appeals"), *rev. denied* (Minn. Sept. 21, 2010). Moreover, neither decision concluded that the phrase "continue to provide" is ambiguous when read in the context of the statute as a whole. Accordingly, we discern no basis to reach a different result based on prior nonbinding decisions interpreting section 299A.465, subdivision 1.

legislature would have included such language.[5]  The legislature did not.  Because we cannot add language to a statute, the city's interpretation—limiting its obligation under subdivision 1(c) to officers and firefighters who maintain uninterrupted coverage—is not reasonable.  *See Firefighters Union Loc. 4725 v. City of Brainerd*, 934 N.W.2d 101, 109 (Minn. 2019) ("[W]e cannot add language to a statute; rather, we must apply the plain language of the statute as written." (quotation omitted)); *see also KSTP-TV v. Ramsey County*, 806 N.W.2d 785, 790 n.9 (Minn. 2011) (declining to "abandon the plain language of" the relevant statute "for an interpretation that inserts a temporal limitation").

Our conclusion is reinforced by reading subdivision 1(c) in conjunction with subdivision 1(d).  *See Walgreens Specialty Pharmacy, LLC v. Comm'r of Revenue*, 916 N.W.2d 529, 536 (Minn. 2018) ("When interpreting statutes, we do not read the sentences of a subdivision in isolation but rather as a harmonious whole.").  Subdivision 1(d) includes the only limitation found in section 299A.465 on the employer's obligation to "continue to provide health coverage for" a qualifying duty-disabled officer or firefighter, and the limitation is not the one that the city argues should be read into subdivision 1(c).  *See* Minn. Stat. § 299A.465, subd. 1.  Subdivision 1(d) states:

> The employer is responsible for the continued payment
> of the employer's contribution for coverage of the officer or

---

[5] In fact, unlike a public employer's unconditional obligation to duty-disabled officers and firefighters, the legislature did condition an employer's obligation to provide continuing dependent coverage under subdivision 1(c).  The legislature specified that an employer "shall continue to provide health coverage for . . . the officer's or firefighter's dependents *if* the officer or firefighter was receiving dependent coverage at the time of the injury under the employer's group health plan."  Minn. Stat. § 299A.465, subd. 1(c)(2) (emphasis added).  The legislature's conditioning of dependent coverage demonstrates that the legislature knew how to include such limiting language.

firefighter and, if applicable, the officer's or firefighter's dependents. *Coverage must continue for the officer or firefighter* and, if applicable, the officer's or firefighter's dependents *until the officer or firefighter reaches* or, if deceased, would have reached *the age of 65*. However, coverage for dependents does not have to be continued after the person is no longer a dependent.

*Id.*, subd. 1(d) (emphasis added). "Must" is mandatory. Minn. Stat. § 645.44, subd. 15a (2022). Therefore, read as a whole, subdivision 1 of section 299A.465 specifies that an employer's obligation to continue to make health-insurance coverage available for a qualifying duty-disabled officer or firefighter ends only when the officer or firefighter reaches age 65. *See Schmidt v. City of Columbia Heights*, 696 N.W.2d 413, 417 (Minn. App. 2005) ("[P]ursuant to [section 299A.465, subdivision 1(d) (2004)], an employer's obligation to pay for benefits [for dependents] ends only when the officer reaches age 65 or the beneficiary loses dependency status.").

In sum, section 299A.465, subdivision 1(c), unambiguously requires a public employer to continue to provide—that is, make available—health-insurance coverage for a qualifying duty-disabled peace officer or firefighter until age 65. We therefore do not consider the legislative history cited by the city. *See Juntunen v. Carlton County*, 982 N.W.2d 729, 740 n.6 (Minn. 2022) (declining to consider legislative history because "such considerations are not appropriate when" the statute's language is unambiguous). Similarly, because the language of subdivision 1(c) is unambiguous, we decline to consider the city's policy arguments. We "may not usurp the legislature's role and decide that, as a matter of policy, a certain class of disabled officers should be disqualified from benefits that the legislature intended all officers to receive for the risks they incur while guarding

12

the peace and safety of the citizens of this state." *See In re Claim for Benefits by Meuleners*, 725 N.W.2d 121, 125 (Minn. App. 2006). Accordingly, based on the plain, unambiguous language of section 299A.465, subdivision 1(c), we hold that a public employer's obligation to continue to provide health-insurance coverage for a qualifying duty-disabled officer or firefighter until age 65 does not terminate if the officer or firefighter allows coverage to lapse and later seeks to reinstate coverage.

Applying the plain language of section 299A.465, subdivision 1(c), to the undisputed facts of this case, we conclude that the city has an ongoing obligation to make health-insurance coverage available for Aldean. Because Aldean is a qualifying duty-disabled officer, Aldean's decision to allow his coverage through the city to lapse is immaterial to the city's obligation to make coverage available to him. The district court therefore did not err by granting summary judgment in Aldean's favor and requiring the city to allow Aldean to access the city's health plan.[6]

---

[6] The city similarly challenges the district court's denial of its motion to dismiss on the basis that Aldean failed to state a claim under section 299A.465, subdivision 1(c), because there was no coverage for the city to "continue." For the reasons above, that argument is unavailing. And the city's other arguments related to deficiencies in the complaint—that it was mistakenly labeled a "Contract" case and sought monetary relief not authorized by section 299A.465—are, at most, harmless error. Aldean amended the complaint to specify it was a "Civil/Miscellaneous" case. Likewise, Aldean clarified prior to summary judgment that he was seeking only declaratory judgment, and the city concedes that Aldean could have sought mandamus relief to gain access to the city's health plan. *Cf. Scherger v. N. Nat. Gas Co.*, 575 N.W.2d 578, 579 n.1 (Minn. 1998) (noting that "[t]he essence of this action was [a] request for a judicial declaration as to the scope and validity of [an] agreement, and therefore was not appropriate for a writ of mandamus," but that "we need not correct the procedure"). As a result, the city's arguments related to the complaint do not present a basis for reversing the district court's grant of summary judgment in Aldean's favor. *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored); *see also*

**DECISION**

Under Minnesota Statutes section 299A.465, subdivision 1(c), a public employer's obligation to "continue to provide health coverage" to a qualifying duty-disabled peace officer or firefighter requires that the employer make health-insurance coverage available for the officer or firefighter until the officer or firefighter reaches age 65. The employer's obligation to make coverage available continues even if that coverage lapses and the officer or firefighter later seeks to reinstate coverage. As a result, the district court did not err by granting summary judgment in Aldean's favor because, under the plain language of the statute, the city's obligation to continue to provide coverage to Aldean did not terminate even though he allowed his coverage to lapse.

**Affirmed.**

---

*Waters v. Fiebelkorn*, 13 N.W.2d 461, 465 (Minn. 1944) ("[E]rror without prejudice is not ground for reversal.").